William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax) (646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
SUN HONG YIM, RACHID DRHOUM,                           :
SUK HWAN KIM, ANGEL BUFFA,                             :        ECF
NARESH MOTWANI, LUTFU OZBEY,                           :        16 Civ. _____
CESAR VASCONEZ, and CVC LIMOUSINE CORP.,              :
Individually and on Behalf of All                     :
Other Persons Similarly Situated,                     :
                                                      :
                        Plaintiffs,                   :
                                                      :        **COMPLAINT AND**
        -against-                                     :        **JURY DEMAND**
                                                      :
CAREY LIMOUSINE NY, INC., CAREY                        :
INTERNATIONAL, INC., GARY L. KESSLER,                 :
SALLY A. SNEAD, and JOHN DOES #1-10,                  :
                                                      :
                        Defendants.                   :
-------------------------------------------------------------------------X

        Plaintiffs SUN HONG YIM, RACHID DRHOUM, SUK HWAN KIM, ANGEL

BUFFA, NARESH MOTWANI, LUTFU OZBEY, CESAR VASCONEZ, and CVC

LIMOUSINE CORP. ("Plaintiffs") individually and on behalf of other persons similarly

situated, by their attorneys, Law Office of William Coudert Rand, individually and on

behalf of all others similarly situated, as class representatives, upon personal knowledge

as to themselves and upon information and belief as to other matters, allege as their

complaint against  CAREY LIMOUSINE NY, INC., CAREY INTERNATIONAL, INC.,

GARY L. KESSLER ("Kessler"), SALLY A. SNEAD ("Snead"), and JOHN DOES #1-

10 (together "Defendants" or "Carey") as follows:

## NATURE OF ACTION

1.     This is an action on behalf of drivers working for Defendants Carey Limousine N.Y., Inc. ("Carey N.Y.") and Carey International, Inc. ("Carey International") and Kessler and Snead  for  unpaid wages, breach of contract damages, and other relief.  Carey provides luxury car and limousine transportation services, mainly in the New York City metropolitan area. Upon information and belief, Carey receives its entire income and revenue through providing transportation services, primarily through the proposed class of workers who drive cars on its behalf.

2.     Plaintiffs  DRHOUM,  YIM,  KIM,  BUFFA,  MOTWANI,  OZBEY,  and VASCONEZ and similar drivers worked  for  Carey  as  drivers  throughout  the  New York City area. Throughout the relevant time period, Carey has controlled the terms and conditions  of  Plaintiffs'  employment,  and  the  employment  of  similarly situated drivers, by, among other things: directing which customers the drivers should pick up, at what time, and at what location; determining the work schedules of Plaintiffs and the other drivers by coercing drivers to work  specified  days  (including  weekends)  and  nights, and  for  specified  lengths  of  time; setting the prices of all fares; controlling the payment of drivers' wages; mandating  that  the  drivers  purchase  insurance  through  Carey, mandating  that  drivers  wear  specified  articles  of  Carey-specific clothing and wear black suits; mandating the use of certain vehicle models in certain colors and the use certain dispatch equipment and proprietary dispatch software; and creating extensive rules and regulations for drivers, breach of which allows the Company to terminate a driver's employment without returning to the driver the extremely large "base fee" payment that the driver was required to pay Carey for the privilege of working for Carey.

3.     By willfully and  unlawfully  misclassifying  its  drivers  as  "independent

contractors," Carey has denied them benefits that the law affords to employees. In particular, Carey has: failed to reimburse or indemnify drivers for employment-related expenses and losses; taken wrongful deductions from drivers' wages; coerced drivers to purchase necessary services and items; failed to pay drivers minimum wage and overtime compensation; and failed to track and document drivers' actual hours worked, as required by federal and New York law. Upon information and belief, this misclassification policy has been in effect since before the relevant state and federal statutory periods.

4.      This lawsuit seeks payment of all unpaid overtime and minimum wage compensation, together with liquidated damages and interest, and the recovery of all unlawful deductions that Carey has taken from the wages of Plaintiffs. pursuant to the Fair Labor Standards Act ("FLSA"). Plaintiffs also seek attorneys' fees and costs.

5.      Plaintiffs also bring claims pursuant to the New York State Labor Law ("NYSLL"), which provides for payment of overtime and minimum wages to employees, and prohibits unlawful deductions from employees' wages. *See* NYSLL §§ 190 *et seq.*; *id.* §§ 650 *et seq.*

**6.**      Plaintiffs also bring breach of contract claims because Carey has systematically underpaid Class Members less than the agreed compensation in their contracts, and because Carey has forced the Class Members to purchase insurance through Carey at inflated prices not reflective of its cost and has charged drivers for fees in violation of the Plaintiffs' contracts.

**7.**      This action is brought as a class and collective action on behalf of the named Plaintiffs and the similar drivers who were not covered by the class action entitled *Lim v. Carey Limousine NY, Inc*., 14 Civ. 05883 (WFK)(JO) (E.D.N.Y.) (filed on

October 7, 2014) ("Prior Action") which settled or who like Plaintiffs opted out of the Prior Action.  Upon information and belief 32 drivers opted out of the settlement of the Prior Action.

**JURISDICTION AND VENUE**

8.       This Court has subject matter jurisdiction because Plaintiffs bring claims under the Fair Labor Standards Act, 29 U.S.C. § 216(b). *See* 28 U.S.C. § 1331. The Plaintiffs have each signed a consent forms to join this lawsuit, which are attached hereto.

9.       This Court has subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), in that the state law claims are so related to Plaintiffs' FLSA claims as to be part of the same case or controversy under Article III of the United States Constitution.

10.      Venue is proper within this District pursuant to 28 U.S.C.  § 1391 because Defendant Carey N.Y.'s primary place of business is in this District and Defendant Carey International is doing business in this District and, therefore, resides in this district. Venue is further proper within this District pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to the claims occurred within this District.

11.      This Court has personal jurisdiction over Defendant Carey N.Y. because Carey N.Y. has its principal place of business in New York. This Court has personal jurisdiction over Carey International, because, upon information and belief, Carey International operates Carey N.Y. and is engaged in a continuous and systematic course of doing business in New York, and transacts business in New York that forms the basis of this suit.

**PARTIES**

12.     Plaintiff Sun Hong Yim ("Yim") is a resident of Ridgefield, New Jersey. Defendants have employed Yim as a driver since 1990.

13.     Plaintiff Rachid Drhoum ("Drhoum") is a resident of Woodside, New York. Defendants have employed Drhoum as a driver during the last three years.

14.     Plaintiff Suk Hwan Kim ("Kim") is a resident of Ridgefield, New Jersey. Defendants have employed Kim as a driver during the last three years.

15.     Plaintiff Angel Buffa ("Buffa") is a resident of Floral Park, New York. Defendants have employed Buffa as a driver during the last three years

16.     Plaintiff Naresh Motwani ("Motwani") is a resident of Saddle Brook, New Jersey.  Defendants have employed Buffa as a driver during the last three years.

17.     Plaintiff Lutfu Ozbey ("Ozbey") is a resident of Freehold, New Jersey. Defendants have employed Buffa as a driver during the last three years.

18.     Plaintiff Cesar Vasconez ("Vasconez") is a resident of Floral Park, New York.  Defendants have employed Buffa as a driver during the last three years.  Vasconez is and has at all times been the sole owner of Plaintiff CVC LIMOUSINE CORP. which signed the driver contract under which Vasconez worked for Defendants.

19.     Defendant Carey International is a Delaware corporation with its headquarters located at 4530 Wisconsin Avenue NW, Suite 500, Washington, D.C., 20016.  Carey International describes itself as the top limousine service in the world, with offices worldwide.

20.     Defendant Carey N.Y. is a Delaware corporation with its principal place of business at 27-10 49th Avenue, Long Island City, NY, 11101. Carey N.Y. is, upon information and belief, a subsidiary of Carey International. Carey N.Y. is registered with

the New York Department of State to do business in New York, and has an agent for service of process in this state.

21.    Upon information and belief, Defendants   GARY L. KESSLER and SALLY A. SNEAD ("Individual Defendants") are each an officer, director and/or managing agent of the Corporate Defendant, whose address is unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and is jointly and severally liable with the Corporate Defendant.

22.    Upon information and belief, during the prior 3 years, the Individual Defendants had authority over the Corporate Defendant's management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendants' porter/janitorial employees and other employees and their decisions directly affected the nature and condition of such employees' employment.

23.    Upon information and belief, during the prior 3 years, the Individual Defendants each (1) had the power to hire and fire porter/janitorial employees of the Corporate Defendant, (2) supervised and controlled the porter/janitorial employees' schedules and conditions of employment, (3) determined the rate and method of payment of the porter/janitorial employees, and (4) maintained employment records related to the porter/janitorial employees.

24.    Defendants Does 1-10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff. When their true names and

6

capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities herein. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously-named Defendants is responsible in some manner for the occurrences herein alleged, and that the damages sustained by Plaintiffs and the Class Members were proximately caused by such Doe Defendants.

25.     Plaintiffs are informed, believe, and thereon allege, that each of the Defendants herein was, at all times relevant to this action, the agent, representing partner, and/or joint venturer of the other Defendant. Plaintiffs are further informed, believe, and thereon allege, that each of the Defendants herein gave consent to, ratified and authorized the acts alleged herein.

## FACTUAL ALLEGATIONS

26.     Defendants operate a luxury car and limousine transportation business, using an integrated network of transportation, communication, and dispatch facilities.

27.     During the relevant periods, upon information and belief, Carey N.Y. has employed over two hundred Drivers to pick up, transport, and drop off passengers, at times and locations, and for prices, determined by Defendants. The Drivers transport passengers to and from the major commercial airports in the New York City metropolitan area, including John F. Kennedy Airport, LaGuardia Airport, and Newark Airport. The Drivers also transport passengers on other non-airport runs that are contracted between Defendants and their customers.

28.     Defendants retain and exercise extensive control over the day-to-day work of the Drivers. The Drivers are assigned specific customers and locations and times for picking them up and dropping them off each day. The Drivers may work only when they are assigned customers and may not pick up customers on their own.

29.     Defendants employ dispatchers, customer service representatives, and other managerial employees at their dispatch facilities, who obtain and assign customers and jobs to the Drivers. Upon information and belief, Defendants' managerial employees have supervisory responsibility over the Drivers. Upon information and belief, the customer   service representatives field complaints about the Drivers, which may then be used to discipline the Drivers. Defendants' dispatchers instruct the Drivers where to go and which passengers to pick up. The Drivers interact with Defendants' personnel throughout their workday.

30.     During relevant the statutory period, Carey mandated the clothes that the Drivers were required to wear, including a Carey-designed black and silver tie, a black conservative suit, and a white dress shirt.

31.     The Drivers are required to provide vehicles that comply with Defendants' specifications. The vehicles must be black and must be one of the specified models approved by Defendants. The vehicles must be more under three years old.

32.     The Drivers are required to purchase and maintain, in a minimum amount set by Defendants, various types of insurance, including liability, property damage, fire, theft, and comprehensive and collision insurance. Under the contracts between Defendants and the Drivers, the Drivers are permitted to purchase insurance from any source, subject to Defendants' approval of the underwriter and compliance with amounts and types of insurance coverage as set forth in the contracts. Defendants' right to approve the underwriter is not unlimited.  Under some contracts between Defendants and the Drivers, the underwriter must be mutually agreed upon by the Driver and Defendants. Some contracts also provide that Defendants' approval shall not be unreasonably withheld.

8

33.     Upon information and belief, until fall 2013, the Drivers were required to participate in an insurance policy from a single underwriter (hereinafter, the "Policy") which covered all Drivers. The Drivers paid Defendants insurance premium at a rate determined by Defendants, and Defendants paid collective premium to the underwriter for the Policy. Drivers had no control over the terms and condition of the Policy, including the premium amount and deductibles. Upon information and belief, insurance policies which provided substantively the same coverage as the Policy were available in the market at lower premium.

34.     Upon information and belief, the total of premium payments collected from the Drivers exceeded the collective premium payment made to the insurance underwriter for the Policy. Upon information and belief, Defendants retained the excess amount collected from the Drivers. For example, Defendants paid approximately $1,056,881 to an insurance underwriter for an insurance policy which covered all Drivers from January 31, 2013 to January 31, 2014. Upon information and belief, Defendants collected more than two million dollars of insurance premium from the Drivers for the insurance policy during the same time period.

35.     Upon information and belief, since fall 2013, the Drivers were able to purchase insurance policies which provided substantively the same coverage as the Policy at lower premium from other insurance underwriters.

36.     Upon information and belief, until fall 2013, the Drivers were required to make insurance claims directly to Defendants, rather than directly to the insurance underwriter. Upon information and belief, Defendants would make the insurance claim on Drivers' behalf and reimburse the Drivers for the cost of any repairs, minus the deductible. Upon information and belief, the Drivers were required to get repairs from a

repair shop approved by Defendants.

37.     Upon information and belief, the Drivers are required to accept jobs assigned to them by Defendants, or the Drivers will be punished by getting written up and/or by the withholding of other assignments, forcing the Drivers to sit idly without receiving pay.

38.     Upon information and belief, during the relevant time period, the Drivers have routinely worked more than ten hours a day and more than 40 hours a week. They have been required by Carey to work late nights, weekends, and holidays.

39.     Upon information and belief, the Drivers do not cruise for customers, and cannot accept passengers who attempt to hail the Drivers on the street without a prior reservation made through Defendants. Until around the fall of 2013 (approximately the time when other lawsuits similar to this one were being litigated against Carey affiliates in other states), the Drivers were not permitted to provide services independent of Defendants' dispatch system without Defendants' consent, upon threat of discipline. Throughout the relevant time period, Drivers have depended on Defendants for the opportunity to render their services and receive pay.

40.     Defendants control the compensation paid to the Drivers. Defendants unilaterally set the prices charged to customers for the services rendered by the Drivers. Pursuant to contracts with the Drivers, Defendants have agreed to pay the Drivers a specified percentage of the fees Defendants charge the customers, minus various employment-related deductions. The Drivers have no control over the rates charged to Defendants' customers.

41.     Defendants pass on to the Drivers various business-related expenses. Upon information and belief, the Drivers are charged undefined "admin fee" of seven

dollars for every assignment they receive, and the Drivers also bear the cost of credit card fees when customers pay with credit cards. Additionally, upon information and belief, Defendants charge Drivers various fees, which are often unexplained to the Drivers.

42.    Defendants promulgate and enforce detailed rules and policies that govern, among other things, Driver appearance, vehicle appearance, and specific items that must be contained in the vehicle. Drivers must pay for business cards bearing the Driver's name and the Company's reservation telephone number and logo. If a Driver violates the Company's rules, the Company may terminate the Driver's employment, while retaining the significant "base fee" payments the Driver has made to the Company.

43.    Upon information and belief, Carey International arranges reservations for a substantial percentage of the passengers driven by Plaintiffs and the Class Members. Upon information and belief, Carey International communicates with Carey N.Y., which then relays Carey International's job assignments to the Drivers. Upon information and belief, Carey International is responsible for paying Drivers and mailing their paychecks.

44.    Plaintiffs and similarly-situated Drivers perform the services that are the central, essential portion of Defendants' business: providing and operating the vehicles that transport Defendants' customers.

45.    Despite Defendants' pervasive control over the Drivers' work, Defendants have uniformly classified and treated the Drivers as non-employee "independent operators."

46.    As a result of Defendants' misclassifying the Class Members as "independent operators," Defendants have failed to indemnify the Class Members for

employment-related expenses, including: the costs of obtaining their vehicles; operation costs associated with the vehicle, such as fuel, maintenance, repair, cleaning, and licensing; insurance premium; costs of maintaining cellular telephone for use by Defendants' customers; and the costs of maintaining Defendants' dispatch equipment. Plaintiffs are informed and believe, and on that basis allege, that Defendants have taken deductions from the Class Members' compensation to cover additional employment-related expenses including, but not limited to, dispatch fees, reservation base fees, credit card fees, and equipment fees.

47.     As a result of Defendants misclassifying the Class Members as "independent operators," and the long hours Defendants have required the Class Members to work, Defendants have willfully and knowingly failed to pay premium overtime compensation to Plaintiffs and similarly-situated Class Members for hours worked in excess of 40 hours per week.

48.     As a result of Defendants misclassifying the Class Members as "independent operators," and the long hours Defendants have required the Class Members to work, and taking into account the employment-related expenses and deductions the Class Members are forced to bear, Defendants have failed to pay minimum wage compensation to Plaintiffs and similarly- situated Class Members for all hours worked.

49.     As a result of Defendants misclassifying the Class Members as "independent operators," Defendants have willfully and knowingly failed to pay an additional hour's pay at the minimum hourly wage rate for each day on which Plaintiffs and the Class Members worked ten or more hours.

50.     As a result of Defendants misclassifying the Class Members as

"independent operators," Defendants have failed to itemize the total hours worked on  wage  statements furnished to Plaintiffs and similarly-situated Class Members.  In addition, Defendants have failed to provide an annual notice that must be provided to employees containing information required by New York law.

51.     Plaintiffs are informed, believe, and on that basis allege, that as a result  of Defendants misclassifying the Class Members as "independent operators," Defendants have not properly maintained payroll records showing the actual hours worked each day by the Class Members, including Plaintiffs.

52.     As a result of Defendants misclassifying the Class Members as "independent contractors," Defendants have willfully and knowingly failed to pay Drivers, upon termination of employment, all accrued compensation due.

53.     Defendants, by and through their agents, induced and/or coerced Plaintiffs and certain Class Members, on threat of non-assignment of future work, to pay Defendants' agents part of their earned compensation as a "kickback." Upon information and belief, the Drivers have been coerced to pay Defendants' dispatchers as much as one thousand dollars per month to be assigned desirable work. Upon information and belief, Drivers who do not participate in the "kickback" scheme are punished by being assigned fewer customers than the Drivers who do.

54.     Upon information and belief, Defendants' managerial employees were aware of the "kickback" scheme but failed to take any corrective measures.

55.     Upon information and belief, Defendants have regularly paid the Drivers less than the contractually promised percentage of the fees that Defendants receive from customers. Upon information and belief, Defendants do so by underreporting to the Drivers the fees that have been charged to the customers, and paying the Drivers a

percentage of this smaller amount. For example, on multiple occasions, Plaintiffs have learned that customers paid higher charges than the charges Carey reported to Plaintiffs, resulting in Carey paying Plaintiffs less than was contractually promised.

<u>**Collective Action Allegations**</u>

56.      Plaintiffs bring this action on behalf of themselves and other employees similarly situated as authorized under the FLSA, 29 U.S.C. § 216(b). The similarly-situated employees are:

**Collective Class**: All persons who worked as drivers for Carey N.Y. during the period commencing six years prior to the filing of the action entitled *Lim v. Carey Limousine NY, Inc*., 14 Civ. 05883 (WFK)(JO) (E.D.N.Y.) (filed on October 7, 2014) through the entry of final judgment in this action (tolled for failure to post notice and based on prior filing) who are not covered by the settlement of the Prior Action or opted out of the settlement of the Prior Action.

57.      Upon information and belief, Defendants suffered and permitted Plaintiffs and the Collective Class to work more than 40 hours per week without overtime compensation, and at a rate sometimes below the minimum wage.

58.      Defendants' unlawful conduct has been repeated and consistent.

59.      Upon information and belief, Defendants knew that Plaintiffs and the Collective Class performed work that required overtime pay. Defendants have operated under a scheme to deprive these employees of appropriate overtime compensation.

60.      Upon information and belief, Defendants knew that Plaintiffs and the Collective Class members were not paid the minimum wage for hours worked. Plaintiffs and the Collective Class members routinely earned below minimum wage as a result of the expenses and deductions that Defendants required Plaintiffs and the Collective Class

members to bear.

61.     Defendants misclassified Plaintiffs and the Collective Class members as independent contractors who were not offered the protection of Federal minimum wage and overtime laws. Defendants misrepresented to these employees that they were independent contractors and therefore not entitled to minimum wages or overtime pay.

**Class Action Allegations**

62.     Plaintiffs bring the New York law claims alleged herein as a class action on behalf of all persons who worked as Drivers for Carey N.Y. during the Class Period covered herein who opted out of the class action settlement agreement in the action *Lim v. Carey Limousine NY, Inc.*, 14 Civ. 05883 (WFK)(JO) (E.D.N.Y.). Plaintiffs seek to pursue their claims on behalf of the following class:

**New York Class:** All persons who worked as drivers for Carey N.Y. during the period commencing six years prior to the filing of the action entitled *Lim v. Carey Limousine NY, Inc.,* 14 Civ. 05883 (WFK)(JO) (E.D.N.Y.) (filed on October 7, 2014) through the entry of final judgment in this action, who are not covered by the settlement of the Prior Action or opted out of the settlement of the Prior Action.

63.     The New York class claims may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. The claims satisfy the requirements of Rule 23, and the proposed Class is easily ascertainable.

64.     <u>Numerosity</u>: The Proposed Class is so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and thereon allege, that during the relevant time period, Defendants employed over two hundred people who satisfy the definition of the New York Class Members.

65.     Typicality: Plaintiffs' claims are typical of those of the New York  Class Members. Plaintiffs, like other Class Members, worked as Drivers for Defendants and were misclassified as independent contractors. Plaintiffs and the Class Members have all sustained similar damages in that they have been under-compensated due to Defendants' misclassification of them. Plaintiffs' duties were typical of the Class, and Plaintiffs were subject to the same common policies and practices by which Defendants controlled the conduct of other Class Members. Like other Class Members, Defendants paid Plaintiffs lower amounts than they were promised under their contracts with Carey N.Y.

66.     Adequacy: Plaintiffs are members of the Class, do not have any conflicts  of interest with the Class, and will prosecute the case vigorously on behalf of the Class. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions, and in particular, misclassification litigation.

67.     Commonality: There are questions of law and fact common to Plaintiffs and the Class Members that predominate over any question affecting only individual members of the class. These common questions of law and fact include, without limitation:

68.     Whether the Class Members have served Defendants as employees rather than independent contractors under New York law;

69.     Whether the Class Members have necessarily incurred employment-related expenses and losses in carrying out their duties for Defendants, and whether Defendants have knowingly and intentionally failed to indemnify the Class Members

for those expenses and losses in violation of NYSLL § 193;

70.     Whether Defendants have knowingly and intentionally made improper deductions from the compensation paid to the Class Members in violation of NYSLL § 193;

71.     Whether Defendants have required, encouraged, or permitted the Class Members to work in excess of 40 hours per week;

72.     Whether Defendants knew or should have known that the Class Members regularly worked over 40 hours per week;

73.     Whether Defendants have knowingly and intentionally failed to pay the Class Members minimum wage for all hours worked in violation of NYSLL § 652;

74.     Whether Defendants have failed to pay the Class Members overtime wages for time worked in excess of 40 hours per week in violation of NYSLL § 652 and 12 NYCRR § 142-2.2;

75.     Whether Defendants have knowingly and intentionally failed to pay the Class Members spread of hours pay in violation of NYSLL § 652 and 12 NYCRR § 142-2.4;

76.     Whether Defendants have knowingly and intentionally failed to provide the Class Members with an annual notice for employees containing information regarding conditions and terms of employment, as required by NYSLL § 195;

77.     Whether Defendants have knowingly and intentionally failed to provide the Class Members with itemized statements showing total hours worked with each payment of wages, as required by NYSLL § 195;

78.     Whether Defendants have knowingly and intentionally breached their contracts with Class Members by paying them less than the agreed percentage of the fees

received from customers;

79.     Whether Defendants have knowingly and intentionally breached their contracts with Class Members by requiring them to purchase insurance from a single insurance underwriter.

80.     Whether Defendants were unjustly enriched at the Drivers' expense when they overcharged the Drivers for the insurance policy.

81.     Whether Defendants and/or their agents unlawfully demanded "kickbacks" as a quid pro quo for assigning jobs to the Class Members in violation of NYSLL § 198-b; and

82.     The nature and extent of class-wide injury and the measure of damages for those injuries.

### FIRST CAUSE OF ACTION
**Failure to Pay Minimum Wage – FLSA**
**(Brought on behalf of Plaintiffs and the Collective Class)**

83.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if set forth fully herein.

84.     Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b). Plaintiffs' written consent forms are attached hereto. Plaintiffs anticipate that other individuals will continue to sign consent forms and join as Plaintiffs.

85.     At all relevant times, notwithstanding Defendants' classification of Plaintiffs and similarly-situated Drivers as independent contractors, Defendants exercised control over the terms and conditions their work so that they were actually "employees" within the meaning of 29 U.S.C. § 203(d).

86.     Defendants, through integrated operations, were Plaintiffs' and the other Drivers' "employers" within the meaning of 29 U.S.C. § 203(d).

87.     Defendants, as owners, officers and/or management of Defendants, were responsible for the wage and hour practices complained of herein and are therefore considered "employers" within the definition of 29 U.S.C. § 203(d).

88.     Plaintiffs and the Drivers directly facilitated the movement of passengers engaged in business that included interstate transactions, and also transported passengers across state lines. Plaintiffs and the Drivers are therefore employees "engaged in commerce or in the production of goods for commerce" as defined in 29 U.S.C. §§ 206(a), 207(a).

89.     Defendants' operations, individually and collectively, constitute an "enterprise" as defined in 29 U.S.C. § 203(r). The annual gross volume of sales made or business done by Defendants' operations, individually and collectively, is in excess of $500,000. Accordingly, Defendants are an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1).

90.     Pursuant to Section 206 of the Fair Labor Standards Act, 29 U.S.C. § 206, the federal minimum wage for the three years preceding the filing of this Complaint was $7.25 per hour.

91.     During the Class Period, Plaintiffs and the other Drivers have each worked weeks in which they earned less than the federal minimum wage, after deductions and expenses.

92.     Defendants, by the above acts, have violated 29 U.S.C. § 206.

93.     Upon information and belief, said violations are willful within the meaning of 29 U.S.C. § 255(a).

## SECOND CAUSE OF ACTION
### Failure to Pay Minimum Wage – NYSLL
### (Brought on behalf of Plaintiffs and the New York Class)

94.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully set forth herein.

95.     At all relevant times, notwithstanding Defendants' classification of Plaintiffs and the Class Members as independent contractors, Defendants exercised control over the terms and conditions of Plaintiffs' and the Class Members' work so that they were actually "employees" within the meaning of NYSLL § 651.

96.     Defendants, through integrated operations, were Plaintiffs' and the Class Members' "employers" within the meaning of NYSLL § 651.

97.     Defendants, as owners and/or officers of Defendants, were responsible for the wage and hour practices complained of herein and are therefore considered "employers" within the definition of NYSLL § 651.

98.     Pursuant to Section 652 of the NYSLL, the minimum rate of wage for the six years preceding the filing of this complaint was $7.15 per hour until July 23, 2009; $7.25 per hour from July 24, 2009 to December 30, 2013; and $8.00 per hour from December 31, 2013 to December 30, 2014; and $8.75 per hour from December 31, 2014 to December 30, 2015; and $9.00 per hour from December 31, 2015 to the present.

99.     During the Class Period, Plaintiffs and the Class Members have each worked weeks in which they earned less than the applicable minimum wage, after deductions and expenses.

100.    Defendants, by the above acts, have violated NYSLL § 652 and 12 NYCRR § 142-2.1.

101.    Defendants had no good faith basis to believe that their actions were in

compliance with the law, within the meaning of NYSLL § 663.

## THIRD CAUSE OF ACTION
### Failure to Pay Overtime Wage – FLSA
### (Brought on behalf of Plaintiffs and the Collective Class)

102.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if set forth fully herein.

103.    Plaintiffs and the similarly-situated Drivers regularly worked more than 40 hours per week during their employment with Defendants.

104.    At all relevant times, Defendants have not paid Plaintiffs and the Drivers at the statutorily required overtime rate of 1.5 times their normal hourly wage for the hours worked in excess of 40 hours in a week.

105.    Defendants, by the above acts, have violated 29 U.S.C. § 207.

106.    Upon information and belief, said violations are willful within the meaning of 29 U.S.C. § 255(a).

## FOURTH CAUSE OF ACTION
### Failure to Pay Overtime Wage – NYSLL
### (Brought on behalf of Plaintiffs and the New York Class)

107.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if set forth fully herein.

108.    At all relevant times, Defendants have not paid Plaintiffs and the Class Members at the statutorily required overtime rate of 1.5 times their normal hourly rate for the hours worked in excess of 40 hours in a week.

109.    Defendants, by the above acts, have violated NYSLL § 652 and 12 NYCRR § 142-2.2.

110.    Defendants had no good faith basis to believe that their actions were in

compliance with the law, within the meaning of NYSLL § 663.

## FIFTH CAUSE OF ACTION
### Failure to Pay Spread of Hours Pay – NYSLL
### (Brought on behalf of Plaintiffs and the New York Class)

111.    Plaintiffs repeat and re-allege the allegations set forth in the foregoing paragraphs as if set forth fully herein.

112.    For each day in which the "spread of hours" from the beginning of Plaintiffs' and the Class Members' day to the end of the day exceeded ten hours, Defendants failed to pay them an additional hour's pay at the minimum hourly wage rate.

113.    Defendants, by the above acts, have violated NYSLL § 652 and 12 NYCRR § 142-2.4.

114.    Defendants had no good faith basis to believe that their actions were in compliance with the law, within the meaning of NYSLL § 663.

## SIXTH CAUSE OF ACTION
### Unlawful Deductions - NYSLL
### (Brought on behalf of Plaintiffs and the New York Class)

115.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if set forth fully herein.

116.    At all relevant times, notwithstanding Defendants' classification of Plaintiffs and the Class Members as independent contractors, Defendants exercised control over the terms and conditions of their work so that they were actually "employees" within the meaning of NYSLL § 190.

117.    Defendants, through integrated operations, were Plaintiffs' and the Class Members' "employers" within the meaning of NYSLL § 190.

118.    Defendants, as  owners and/or officers of Defendants Carey, were

responsible for the wage and hour practices complained of herein and are therefore considered "employers" within the definition of NYSLL § 190.

119.     Pursuant to Section 193 of the NYSLL, Defendants were prohibited from deducting any wages from Plaintiffs' and the Class Members' pay.

120.     Defendants violated Section 193 of the NYSLL by deducting various employment-related expenses, including but not limited to, insurance fees, reservation fees, and credit card fees, and other fines and penalties.

121.     Defendants had no good faith basis to believe that their actions were in compliance with the law, within the meaning of NYSLL § 198.

**SEVENTH CAUSE OF ACTION**
**Failure to Pay Wages When Due – NYSLL**
**(Brought on behalf of Plaintiffs and the New York Class)**

122.     Plaintiffs repeat and re-allege the allegations set forth in the foregoing paragraphs as if set forth fully herein.

123.     Defendants misclassified Plaintiffs and the Drivers as independent contractors, and therefore failed to pay them overtime and minimum wage when due, among other wages owed.

124.     Plaintiffs and the Class Members were "manual workers" as defined in NYSLL § 190(4).

125.     Pursuant to NYSLL § 191(1)(a), Defendants were obligated to pay Plaintiffs and the Class Members their earned wages no less than weekly.

126.     By failing to pay earned wages for the reasons set forth above, Defendants have violated NYSLL § 191.

127.     Defendants had no good faith basis to believe that their actions were in compliance with the law, within the meaning of NYSLL § 198.

**EIGHTH CAUSE OF ACTION**
**Notice and Recordkeeping Requirements – NYSLL**
**(Brought on behalf of Plaintiffs and the New York Class)**

128.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if recited at length herein.

129.    Pursuant to NYSLL § 195, Defendants were required to furnish Plaintiffs and the Class Members with an annual notice containing the rate or rates of pay and the basis thereof, whether paid by hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section 191 of the NYSLL; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and such other information as the commissioner deems material and necessary.

130.    Defendants failed to provide Plaintiffs and the Class Members with any such notice at any time during their employment.

131.    Defendants had no good faith basis to believe that their actions were in compliance with the law, within the meaning of NYSLL § 198.

**NINTH CAUSE OF ACTION**
**Failure to Provide Accurate Wage Statements – NYSLL**
**(Brought on behalf of Plaintiffs and the New York Class)**

132.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if set forth fully herein.

133.    Pursuant to NYSLL § 195, Defendants were required to provide Plaintiffs and the Class Members with accurate wage statements setting forth: the dates of work covered by that payment of wages; name of employee; name of employer; address and

phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

134.    Defendants did not provide accurate wage statements to Plaintiffs and the Class Members for all weeks worked.

135.    Defendants had no good faith basis to believe that their actions were in compliance with the law, within the meaning of NYSLL § 198.

**TENTH CAUSE OF ACTION**
**Violation of Prohibition on Kickbacks – NYSLL**
**(Brought on behalf of Plaintiffs and the New York Class)**

136.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if set forth fully herein.

137.    At all relevant times, notwithstanding Defendants' classification of Plaintiffs and the Class Members as independent contractors, Defendants were Plaintiffs' and the Class Members' "employers" within the meaning of NYSLL § 651.

138.    Pursuant to NYSLL § 198-b, Defendants were prohibited from requesting, demanding, or receiving "kickbacks."

139.    Defendants violated NYSLL § 198-b through their agents, who demanded and received "kickbacks" for assigning jobs to certain Plaintiffs and the Class Members. Defendants' managerial employees were made aware of the "kickback" scheme but failed to take any corrective measures.

140.    Defendants had no good faith basis to believe that their actions were in compliance with the law, within the meaning of NYSLL § 198.

## ELEVENTH CAUSE OF ACTION
### Breach of Contract
### (Brought on behalf of Plaintiffs and the New York Class)

141.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if set forth fully herein.

142.    Defendants entered into contracts with the Class Members, including written "Independent Operator Agreements," pursuant to which Defendants promised to pay the Class Members a particular percentage of fees that customers paid to Defendants for the Class Members' services.

143.    Defendants have breached the contracts by inter alia (a) paying Plaintiffs and the Class Members less than the agreed percentage of amounts billed to customers, (b) improperly charging Plaintiffs and the class members for items such as "Drug testing Charges", "Payment Accrual Reversals" and "Telephone," (c) failing to provide automobile insurance to certain Plaintiffs and Class Members, (d) failing to allow Plaintiffs and Class Members to permit other drivers to drive under their driver contracts, and/or by (e) overcharging Plaintiffs and Class Members for automobile insurance.

144.    Defendants' actions are in violation of the express terms of the contracts, as well as the implied covenant of good faith and fair dealing.

145.    Defendants' actions have resulted in damage to Plaintiffs and the Class Members, including but not limited to the deprivation of the benefit for which they bargained when they paid the base fees.

146.    Defendants entered into contracts with the Class Members, including written "Independent Operator Agreements," pursuant to which Defendants permitted the Class Members to purchase insurance from any source, subject to Defendants'

approval and compliance with the minimum amounts and types of coverage as set for in the contracts. Under some contracts between Defendants and the Drivers, the underwriter must be mutually agreed upon by the Driver and Defendants.

147.    Defendants have breached the contracts by mandating that all Class Members participate in and insurance policy from a single underwriter which covered all Drivers (the "Policy"). The Class Members were not allowed to purchase insurance from any other source.

148.    Upon information and belief, insurance policies which provided substantively the same coverage as the Policy were available in the market at lower premium.

149.    Defendants' actions are in violation of the express terms of the contracts, as well as the implied covenant of good faith and fair dealing.

150.    Defendants' actions have resulted in damage to Plaintiffs and the Class Members, including but not limited to the deprivation of the benefit for which they bargained when they paid the base fees.

### TWELTH CAUSE OF ACTION
**Unjust Enrichment**
**(Brought on behalf of Plaintiffs and the New York Class)**

151.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if set forth fully herein.

152.    Until fall 2013, Defendants required all Class Members to participate in the Policy. The Class Members were not allowed to purchase insurance from any other source. The Drivers paid Defendants monthly insurance premium, in amounts determined by Defendants, and Defendants paid the collective premium to the underwriter.

153.    Upon information and belief, the amount Defendants collected from the

Drivers for the Policy exceeded the amount Defendants paid the underwriter for the Policy. Upon information and belief, Defendants retained the excess payments from the Drivers.

154.     Defendants were unjustly enriched by, upon information and belief, retaining approximately one million dollars per year of excess payments from the Drivers.

155.     Defendants were enriched at the Drivers' expense, as the Drivers paid more than they should have paid for the insurance. Upon information and belief, since fall 2013, many Drivers were able to purchase cheaper insurance policies with substantive the same coverage as the Policy from the market.

156.     Defendants' actions have resulted in damage to Plaintiffs and the Class Members, including but not limited to the overpayment of insurance premium.

## THIRTEENTH CLAIM FOR RELIEF
### (FLSA - Discrimination and Retaliation on behalf of Named Plaintiff Yim)

157.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if set forth fully herein.

158.     Defendants reduced the amount and quality of work given to Plaintiff Sun Hong Yim ("Yim") because he filed a complaint alleging violations of the FLSA and the New York Labor Law against Defendants. *See Lim v. Carey Limousine NY, Inc.,* 14 Civ. 05883 (WFK)(JO) (E.D.N.Y.) (filed on October 7, 2014)    The reduction in his work was a retaliation for Plaintiff Yim's filing his original complaint in the action.

159.     By intentionally reducing the amount and quality of work offered to Plaintiff Yim, Defendants violated the FLSA, 29 U.S.C. §201 et seq.   Section 215 (a) (3) specifically states:

It shall be unlawful for any person—

(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act [29 USCS §§ 201 et seq., generally; for full classification, consult USCS Tables volumes], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

160.    Due to Defendants' reduction of work offered to Plaintiff Yim, Plaintiff seeks and is entitled to recover from Defendants his unpaid wages, unpaid overtime compensation, damages for unreasonably delayed payment of wages, back pay, front pay, rehiring and/or reinstatement to his former position, and reasonable attorneys' fees, and costs and disbursements of the action.

**FOURTEENTH CLAIM FOR RELIEF**
**(New York Labor Law - Discrimination and Retaliation on behalf of Plaintiff Yim)**

161.    Plaintiffs repeat and reallege each and every allegations of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

162.    By reducing the quantity and quality of work offered to Plaintiff Yim, Defendants violated New York Labor Law § 215.

163.    New York Labor Law § 215 states:

§ 215.  Penalties and civil action; Prohibited Retaliation

1(a) No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner (ii) because such employer or person believes that such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general, or to any other person that the employer has violated any

provision of this chapter, or any order issued by the commissioner (iii)
because such employee has caused to be instituted or is about to institute a
proceeding under or related to this chapter, or (iv) because such employee
has provided information to the commissioner or his or her authorized
representative or the attorney general, or (v) because such employee has
testified or is about to testify in an investigation or proceeding under this
chapter, or (vi) because such employee has otherwise exercised rights
protected under this chapter, or (vii) because the employer has received an
adverse determination from the commissioner involving the employee.

* * * *

2.   (a)  An employee may bring a civil action in a court of
competent jurisdiction against any employer or persons alleged to have
violated the provisions of this section.   The court shall have jurisdiction to
restrain violations of this section, within two years after such violation,
regardless of the dates of employment of the employee, and to order all
appropriate relief, including enjoining the conduct of any person or
employer;  ordering payment of liquidated damages, costs and reasonable
attorneys' fees to the employee by the person or entity in violation;  and,
where the person or entity in violation is an employer, ordering rehiring or
reinstatement of the employee to his or her former position with
restoration of seniority or an award of front pay in lieu of reinstatement,
and an award of lost compensation and damages, costs and reasonable
attorneys' fees.   Liquidated damages shall be calculated as an amount not
more than ten thousand dollars.   The court shall award liquidated
damages to every employee aggrieved under this section, in addition to
any other remedies permitted by this section.   The statute of limitations
shall be tolled from the date an employee files a complaint with the
commissioner or the commissioner commences an investigation,
whichever is earlier, until an order to comply issued by the commissioner
becomes final, or where the commissioner does not issue an order, until
the date on which the commissioner notifies the complainant that the
investigation has concluded.   Investigation by the commissioner shall not
be a prerequisite to nor a bar against a person bringing a civil action under
this section.

(b)  At or before the commencement of any action under this
section, notice thereof shall be served upon the attorney general by the
employee.

3.    Any employer or his or her agent, or the officer or agent of
any corporation, partnership, or limited liability company, or any other
person who violates subdivision one of this section shall be guilty of a
class B misdemeanor.

164.    Prior to the commencement of this claim, on July 12, 2016, Plaintiff Yim

served a copy of this Complaint upon the Attorney General of New York State.

165.    Due to Defendants' illegal termination of Plaintiff Yim, Plaintiff Yim seeks and is entitled to recover from Defendants his unpaid wages, unpaid overtime compensation, damages for unreasonably delayed payment of wages, back pay, front pay, and reasonable attorneys' fees, costs and disbursements of the action, and punitive damages, pursuant to New York Labor Law § 663(1).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on behalf of himself and the above-described Collective and New York Classes, respectfully requests that this Court enter judgment:

a.  certifying the above-described New York Class as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.  designating Plaintiffs as representative of the Rule 23 Class, and counsel of record as Class Counsel;

c.  providing class notice to all Class Members;

d.  determining that this action may be maintained as a collective action under 29 U.S.C. § 216(b) of the FLSA;

e.  declaring that the acts and practices complained of herein are in violation of the FLSA and the NYSLL;

f.  awarding Plaintiffs and the Class Members all unpaid wages due as a result of Defendants' violations of the minimum wage provisions of the FLSA and the NYSLL;

g.  awarding Plaintiffs and the Class Members all unpaid wages due as a result of Defendants' violations of the overtime provisions of the FLSA and the NYSLL;

h.  awarding Plaintiffs and the Collective Class Members liquidated damages under

29 U.S.C. § 216(b);

i. awarding Plaintiffs and the New York Class Members liquidated damages under NYSLL § 663;

j. awarding Plaintiffs and the Class Members all wages that were unlawfully deducted from their paychecks;

k. awarding Plaintiffs and the Class Members damages for all wages that were not timely paid;

l. awarding Plaintiffs and the Class Members liquidated damages as provided for in NYSLL § 198;

m. awarding Plaintiffs and the New York Class Members an additional hour's pay at the minimum wage rate for each day on which Plaintiffs and the Class Members worked ten or more hours, as provided in 12 NYCRR § 142-2.4 and NYSLL § 663;

n. awarding Plaintiffs and the New York Class Members liquidated damages for all spread of hours pay pursuant to NYSLL § 663;

o. awarding Plaintiffs and the New York Class Members statutory damages per day/week for each day/week Defendants failed to provide appropriate notification pursuant to NYSLL § 195;

p. awarding Plaintiffs and the Class Members damages for Defendants' breaches of contract;

q. awarding Plaintiffs and the Class Members damages for Defendants' unjust enrichment from collecting insurance premium; and

r. granting such other and further relief as this Court deems proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

a trial by jury on all questions of fact raised by the complaint.


Dated: New York, New York
July 12, 2016

LAW OFFICE OF WILLIAM COUDERT
RAND


_____
William Coudert Rand, Esq.
*Attorney for Plaintiffs*,
Individually and on Behalf of All
Persons Similarly Situated,
501 Fifth Ave., 15th Floor
New York, New York 10017
Tel: (212) 286-1425
Fax: (646) 688-3078
Email: wcrand@wcrand.com

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of *Carey Limousine NY, Inc., Carey International, Inc.* to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____   11/10/15   _____
Signature                   Date        Print Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of ___Carey Limousine, N.Y.___ ___Carey International, Inc.___ to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____  _____  RACH'D DRHOUM
**Signature**                    **Date**   **Print Name**

8

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of

_Carey Limousine NY INC Carey International INC_ to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_Suk Hwan Kim_            _6/23/16_         _Suk Hwan Kim_
Signature                         Date    Print Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Carey Limousine NY Inc., Carey International, Inc. to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____   6-20-16   ANGEL BUFFN
Signature                 Date        Print Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of
_Cary Limousine Inc., Cary Int, Inc._ to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____     6/23/16     NARESH MOTWANI
Signature                   Date        Print Name

8

<u>CONSENT TO BECOME PARTY PLAINTIFF</u>

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of CAREY LIMOUSINE NY INC, CAREY INTERNATIONAL INC Gary Kessler ) to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____          _____     LUTFU OZBEY
Signature                                 Date        Print Name
                                                      _____


8

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of

Carey & Limousine NY Inc. Carey Int. Inc. to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____         6-22-2016    Cesar Vasconez And CVC Limousine Corp
Signature                        Date    Print Name

8